### DOME THEATER CO v TRIGG

Ohio Appeals, 7th Dist, Mahoning Co
Decided March 20, 1931

Anderson & Lamb, Youngstown, for Trigg.
William E. Pfau, Youngstown, for Theater Co.

ROBERTS, J.

In effect these three propositions may be considered as one in determining the weight and sufficiency and effect of the evidence

in this case. It is not thought necessary to go very deeply or fully into the evidence or facts involved in this case, by reason of the fact that this is its second appearance in this court.

It is claimed by the defendant in error that on the night of the 17th of January, 1925, he, accompanied by his wife, went to the Dome Theater in this city, purchased tickets for the gallery and then proceeded to ascend the stairs to the gallery; that upon presumably the fourth step from the bottom he tripped and fell forward, thereby receiving serious and perhaps permanent injuries. The stairway was covered first with a padding of some undisclosed material, and then covered with a carpet of heavy texture, which was maintained or intended to be maintained in place by the use of metal corrugated strips, which extended backward about four inches from the front edge of each step and were curved or bent downward around the projecting edge of the tread for an inch or more. There is some dispute in the testimony as to whether there was a projection of the tread or whether the tread simply came out flush with the riser. In any event, this metal strip was bent or curved downward and inward at its lower edge to come in contact with the carpet. It was fastened, as is now admitted, by screws through the upper portion of the strip into the wood of the tread.

The plaintiff was proceeding some two steps in advance of his wife. He says, in effect, that his foot caught upon something and held the foot back so that he was caused to fall. His wife testified that following him she saw his foot catch and saw him fall, and they both testify, in effect, that the toe of his shoe caught in the projecting edge of this metal strip which a subsequent examination by them immediately following the accident disclosed had become loosened; that this was the conditon of the screws which were intended to hold it tight upon the step, and the wife testified that one of the screws was missing; that they were able to manipulate this tread and that it was loose and could be easily moved up and down and extended out from the step a short distance, whereby and as a result presumably of that projecting outward his foot caught.

Mr. Trigg and his wife were the only witnesses who testified as to the accident itself, or saw it or knew of it at the time. They proceeded on up to the gallery, remaining during the performance and later went home. Mr. Trigg and his wife did not regard his injuries at that time as serious.

He was an attorney and employed in the office of Wilson, Hahn & Wilson. It ap-

pears from the evidence that this firm represented an insurance company, which had insured the Dome Theater Company against liability for accidents. The accident occurred on Saturday night and on Monday morning, at the suggestion of Mr. Wilson, Trigg went to the office of the theatre to suggest to Mr. Robins, who was the manager of it, the defective condition of this strip and that it ought to be taken care of to prevent a repetition of accidents.

Mr. Robins in his testimony admits that he had already in some way learned of the accident on the Saturday night previous, and he had the name and address of Mr. Trigg as the person who had fallen and perhaps received some injury. It is contended by Mr. Trigg that an examination was made of the step and that a later examination was made a few days afterwards, when he, accompanied by his wife, again called at the theatre and pointed out the step where he claimed to have been injured to Mr. Robins, and that it was then loose and the condition existed which I have suggested.

The testimony of Mr. and Mrs. Trigg was substantially all of the testimony on the part of the plaintiff below as to the condition of this strip as to whether or not it was defective. Contradicting this testimony a considerable number of witnesses testified for the theatre, the nature of whose testimony was largely negative. There was the testimony of John Garde, the door man, who took the tickets at the foot of the stairs, and who heard or knew nothing of the accident at the time; Frank Barclay, who sold the carpet and placed it originally upon the stairs; Dr. Ryall, a patron of the theatre, who testified he had never observed any defective condition; Fred VanDusen, the janitor; Ida Stewart, an employe, who regularly dusted the stairway, and VanDusen, or some other employe, used a vacuum cleaner upon the carpet with regularity; Florence Hewitt, a patron of the theatre; Louie A. Gipp, a detective, who devoted some spare time to attending the performances, as was also the fact of another detective by the name of Albaugh; Mrs. Frank Barclay, a patron; Dr. Sedwitz, a patron, and Herman Myer, an usher. The testimony of all of these witnesses was substantially to this effect, whether they went as patrons or whether as employes and their duties required them to ascend and descend the stairs regularly, or whether their duties involved keeping the carpet, railing and so forth clean and the brass polished, that they had never noticed and never knew of any defective condition in these treads. Upon the proposition as to whether it was necessary and what the fact

was as to whether the theater company had knowledge previously of any defective condition of this or any other corrugated step upon the stairway, it is urged, with some reason, we think, that the worn and insecure condition, as testified to by at least Mr. Trigg and his wife, must have been a condition which had existed for some time previous and would be suggestive of previous notice of this condition and a duty to correct the defect. Upon this proposition a woman by the name of Mrs. White testified. It appears from the evidence that Mr. Trigg made some statement in a barber shop subsequently that he had fallen upon this stairway and the barber recalled that his wife had had a similar experience, and he related to his wife what had occurred to Mr. Trigg, as he understood, and she said she had fallen upon this stairway, and testified that presumably a few days previous to this accident she had tripped and fallen upon, as she said in the later trial, a step which was very close to or perhaps the same step that Mr. Trigg and his wife claimed was defective, and that she made an examination and found the corrugated strip loose and that it might be easily pulled up and down, and that it was subject to movement when it was stepped upon, and that the front edge projected out and was liable to be caught by the foot of a person ascending the stairs. Weight quite materially taken from her testimony by reason of the fact that part of her testimony in the previous trial was introduced in evidence, wherein it was shown that she testified, which she denied in the latter trial, that the step upon which she tripped was near the top of the stairway.

Taking this evidence into consideration, and all of the evidence in the case which has not been attempted to be set forth very fully at this time, the question arises whether this court may properly reverse the judgment of the Court of Common Pleas upon the weight of the evidence. This question was involved in the former submission to this court, and it was then suggested by this court that there was credible evidence in the case which in our opinion precluded a reversal upon that ground.

In the case of **The Toledo, Columbus & Ohio River Railroad Company, et al. v Miller, 108 Oh St, 388,** the concluding paragraph of the syllabus reads as follows:

"In an action for damages for personal injury, a verdict should not be set aside unless the damages awarded are so excessive as to appear to have been awarded as a result of passion or prejudice, or un-

less it is so manifestly against the weight of the evidence as to show a misconception by the jury of its duties in the premises."

Or, as is otherwise and perhaps more recently stated to be the rule, if there is credible evidence to support the verdict, a reviewing court is not authorized to reverse upon that ground.

It is a matter from which perhaps some inference may be drawn that the theater company did not produce any witness, aside from Mr. Robins, himself, who examined the stairway with Mr. and Mrs. Trigg, and said there was nothing wrong with this tread, but other witnesses were not produced who examined them to ascertain the condition after the accident. Admittedly Mr. Robins, the manager, knew the next morning that an accident was claimed to have happened by reason of the condition of the tread upon this particular step of this stairway, the condition immediately preceeding his acquiring knowledge of the matter. It would seem that the desire would have suggested itself to him to have called competent persons to then make an examination for the specific purpose of determining the condition of this step and tread, that substantial evidence might be available in the trial of the issue, but this does not seem to have been done and the company depended largely, as has been suggested, upon employes who in the performance of their duties did some work in connection with the stairway or frequently passed up and down the stairway and upon patrons who had frequently witnessed the performances and had never noticed any defective condition in the stairway or had any trouble themselves. That is not very strong testimony. The evidence discloses that perhaps a thousand people, sometimes more, visited this theater in a single day, and the fact that several of these people may have gone in and out, or a great many of them, and not have noticed anything wrong with the stairway, would not be particularly important, especially when people are going up a stairway where a considerable number are quite close together, opportunity would not be afforded for a very close inspection and there would not usually be any thought or effort to make an inspection.

It is urged by counsel for plaintiff in error that Mrs. Trigg, following her husband, whom she says was wearing an overcoat, would not be able to see his foot and notice how it caught when he fell. However, we are not able to say she was not able to see. Mr. Trigg says he thinks he left his overcoat in the car when he went into the theater, but finally this court is

not able to say that the result of the verdict must be by a misconception of the jury of its duty in the premises, or to say there was not credible evidence supporting this verdict, and such being the fact we are not authorized to make a reversal of this case upon the weight of the evidence, and the judgment of the Court of Common Pleas is therefore affirmed.

POLLOCK and WILLIAMS, JJ, concur.